Gregory A. McDonnell
**ORR McDONNELL LAW, PLLC**
627 Woody St.
Missoula, MT 59802
Phone: 406-543-0999
Fax: 406-552-0560
greg@omlmt.com
katie@omlmt.com

*Attorneys for Petitioner*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| RON MARSHALL, in his official capacity as Representative of the 87th Legislative District, Montana House of Representatives,<br><br>Petitioner,<br><br>v.<br><br>THE ALTRIA GROUP INC., NJOY HOLDINGS, INC., R.J. REYNOLDS TOBACCO COMPANY and, R.J. REYNOLDS VAPOR COMPANY,<br><br>Respondents. | Cause No.: CV-25-13-H-TJC<br><br><br><br>**VERIFIED PETITION FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |

COMES NOW the Petitioner, Ron Marshall, in his official capacity as Representative for the 87th Legislative District, Montana House of Representatives

(hereinafter, "Marshall"), and for his Verified Petition for Declaratory Judgment and Preliminary and Permanent Injunctive Relief against the Respondents, The Altria Group, Inc. (hereinafter "Altria"), NJOY Holdings, Inc. (hereinafter "NJOY"), R.J. Reynolds Tobacco Company (hereinafter "Reynolds"), and R.J. Reynolds Vapor Company (hereinafter "Reynolds Vapor"), states as follows:

## NATURE OF ACTION

1.     This is a civil action in which Marshall acts under the private attorney general doctrine to enforce, on behalf of the citizens of the State of Montana: (a) certain disclosure requirements embodied in the 1998 Tobacco Master Settlement Agreement (hereinafter "MSA"), of which the State of Montana is a signatory by and through its former Attorney General; (b) a prohibition set forth in the MSA against certain lobbying activities by Altria, Reynolds and their affiliates; and (c) a prohibition against Altria, Reynolds and their affiliates taking actions which result in the targeting of youth concerning the promotion of cigarettes in order to maintain or increase the incidence of youth smoking in Montana. A true and accurate digital photocopy of the MSA and its pertinent exhibits are attached hereto collectively as **Exhibit 1**.

2.     The respective signatory states (i.e. the "Settling States") are tasked with ensuring the MSA's enforcement. MSA Section XVIII(p). Under Montana law, the Montana Attorney General is tasked with responsibility for representing the State of

Montana in matters which concern the protection of its citizens. *See* Mont. Const. Art. § IV (4) and Mont. Code Ann. § 2-15-501.

3.    In this instance, however, the Montana Attorney General, Austin Knudsen, has an inextricable conflict of interest by virtue of the fact that both Altria and Reynolds were "platinum" sponsors of his January 11, 2025 inauguration party. Further, Attorney General Knudsen provided a January 28, 2025 op-ed in the Montana Newsroom media publication, similar to those authored by other state attorneys general after lobbying from Altria and Reynolds, which evidences an abdication of his duties to enforce the portions of the MSA here at issue against Altria, Reynolds and their affiliates.[1]

## PARTIES

4.    Marshall is an individual and a citizen of the State of Montana, having his principal residence in Ravalli County, Montana. Marshall is the duly elected Representative for the 87th Legislative District of the Montana House of Representatives and is bringing this action in his official capacity under the private attorney general doctrine on behalf of the citizens of the 87th Legislative District and the citizens of the State of Montana as a whole.

5.    Altria is a corporate entity incorporated under the laws of the State of

---

[1]  *See* Montana Newsroom, Opinion: Attorney General Austin Knudsen (January 28, 2025) https://montananewsroom.com/china-is-targeting-our-kids/ (accessed February 10, 2025).

Virginia and is a citizen of such state. Altria's combustible tobacco products are marketed and sold in the State of Montana.

6.    NJOY is a corporate entity incorporated under the laws of the State of Delaware and is a citizen of such state. Upon information and belief, NJOY is an affiliate or subsidiary entity related to Altria. NJOY's vaping products are marketed and sold in the State of Montana.

7.    Reynolds is a corporate entity incorporated under the laws of the State of North Carolina and is a citizen of such state. Reynolds' combustible tobacco products are marketed and sold in the State of Montana.

8.    Reynolds Vapor is a corporate entity incorporated under the laws of the State of North Carolina and is a citizen of such state. Upon information and belief, Reynolds Vapor is an affiliate or subsidiary entity related to Reynolds. Reynolds Vapor's vaping products are marketed and sold in the State of Montana.

## JURISDICTION and VENUE

9.    This Court has original subject matter jurisdiction to hear this case and adjudicate Marshall's claims pursuant to 28 U.S.C. § 1332(a)(2), which confers original jurisdiction on federal district courts to hear suits alleging a controversy between citizens of a state and citizens or subjects of a foreign state in which the amount in controversy exceeds $75,000.00, exclusive of costs. In this instance, the value of the injunctive relief which Marshall seeks will exceed $75,000.00.

10.    Alternatively, this Court also has original subject matter jurisdiction to hear this case and adjudicate Marshall's claims pursuant to the "All Writs Act," 28 U.S.C. § 1651, which confers original jurisdiction on federal courts to issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

11.    This Court is the appropriate venue of Marshall's claims pursuant to 28 U.S.C. §1391(b)(2) and 28 U.S.C. §1391(b)(3).

## FACTS and ALLEGATIONS

### Altria and Reynolds are Leading Cigarette Manufacturers

12.    Altria is a legacy cigarette manufacturer, being a direct successor of Phillip Morris Companies, Inc. by virtue of a 2003 corporate rebranding. The existence of Phillip Morris as a cigarette manufacturer dates to at least 1847 and has a global corporate footprint for its cigarette products.

13.    Reynolds is also a legacy cigarette manufacturer whose existence dates to at least 1875. Like Altria, Reynolds has a global corporate footprint for its cigarette products.

### Vaping Products

14.    In 2003, a Chinese pharmacist, Mr. Hon Lik, developed the first marketable vaping product which used a piezoelectric element to aerosolize a liquid nicotine and propylene glycol solution (an E-Liquid).

5

15.   Unlike cigarettes, vaping products do not contain any part of a tobacco leaf or stalk, and their use also does not involve combustion or the emission of many of the toxic substances associated with smoking.

16.   Vaping products instead use an E-Liquid: a solution of propylene glycol, vegetable glycerin, food-grade flavorings, and in some cases, nicotine of varying concentrations. Such nicotine may be derived from either tobacco plants, another plant or made synthetically.

17.   The industry's evolution involved its segmentation into the distinctive "closed-system" and "open-system."  This segmentation tracked the character and size of the manufacturers; the products' physical characteristics; and the products' retail channels.

18.   All first-generation vaping products were of the closed-system variety, designed to look like traditional cigarettes—often called "cigalikes."

19.   Closed-system vaping products have two distinguishing features: (1) small device size and (2) a disposable pre-filled cartridge or fully-disposable device/cartridge combination which offers a limited variety of E-Liquid flavors. Closed-system device batteries generate a low quantity of power and thus require E-Liquids having a high nicotine concentration in order to provide a satisfactory consumer experience. Closed-system vaping products allow consumers few customization options.

20.   The birth and growth of the open-system vaping product segment can be traced to early consumers who were dissatisfied with the quality of the first-generation products, particularly dissatisfied with the low device power and the generally poor quality and consistency of E-Liquids.

21.   Open-system vaping devices are larger in size than closed-system vaping products and rely on four key operational elements: (1) high powered, rechargeable lithium batteries which are replaceable or self-contained; (2) computer circuitry which allows for the independent regulation of the device's thermal and wattage parameters; (3) interchangeable and refillable E-Liquid tanks (referred to as atomizers); and (4) a significant selection of E-Liquid brands.

22.   Open-system vaping devices generate a greater quantity of power *vis-à-vis* closed-system devices and thus allow consumers to utilize E-Liquids having a lower nicotine concentration. These technological advances have allowed consumers virtually unlimited freedom to customize their devices and vaping experiences

23.   Upon Marshall's information and belief, both Altria and Reynolds expanded their business operations in approximately 2015 to embrace vaping products and have confined their efforts to manufacturing and selling closed-system vaping products respectively under the NJOY and VUSE brand names.

**The MSA**

24.   Prior to November 1998, numerous states had sued Altria, Reynolds and

other cigarette manufacturers to recoup the public healthcare costs incurred from the consumption of their cigarette products.

25.   In November 1998, the then four largest United States cigarette manufacturers (Philip Morris Inc., R.J. Reynolds, Brown & Williamson and Lorillard) entered into the MSA with the attorneys general of 46 states, including Montana.[2]

26.   Under the MSA's terms, the signatory states, including Montana, settled all then-pending Medicaid lawsuits against the tobacco industry and waived the right to bring future claims. In consideration and exchange, the signatory tobacco companies agreed to refrain from certain activities, including the curtailing or cessation of certain tobacco marketing practices, and to pay, in perpetuity, various annual payments to the signatory states to compensate them for some of the medical costs of caring for persons with smoking-related illnesses.

27.   The signatory tobacco companies and their affiliates agreed to refrain from taking of "any action, directly or indirectly, to target Youth," defined by MSA Section II(bbb) as being "any person or persons under 18 years of age," in Montana "in the advertising, promotion or marketing of Tobacco Products," defined by MSA

---

[2] The Settling States were Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin and Wyoming.

Section II(vv) as being "cigarettes and smokeless tobacco products," or "take any action the primary purpose of which is to initiate, maintain or increase the incidence of Youth smoking" within Montana. *See* MSA Section III(a).

28.  MSA Section III(m) further sets forth certain anti-lobbying provisions which prohibit Altria, Reynolds and their affiliates from opposing, or causing to be opposed, directly or through a third-party or affiliate, the passage of any law in Montana or a political subdivision thereof any proposal or administrative rule "described in [an exhibit] hereto intended by their terms to reduce Youth access to, and the incidence of Youth consumption of, Tobacco Products." Exhibit F to the MSA represents the exhibit referenced in MSA Section III(m).

29.  The scope of Exhibit F described in MSA Section III(m) prohibits Altria, Reynolds and their affiliates from lobbying against any legislative proposal which would:

(1)  impose a limitation on youth access to vending machines;

(2)  include cigars within the definition of tobacco products;

(3)  enhance enforcement efforts to identify and prosecute violations of laws prohibiting retail sales to youth;

(4)  encourage or support the use of technology to increase effectiveness of age-of-purchase laws, such as, without limitation, the use of programmable scanners, scanners to read drivers' licenses, or use of other age/ID data banks;

(5)  impose limitations on promotional programs for non-tobacco goods using tobacco products as prizes or giveaways;

(6) enforce access restrictions through penalties on youth for possession or use;

(7) impose limitations on tobacco product advertising in or near school facilities, or wearing of tobacco logo merchandise in or on school property; and

(8) impose limitations on non-tobacco products which are designed to look like tobacco products, such as bubble gum cigars, or candy cigarettes.

MSA, Exhibit F.

30.    MSA Section III(m) further requires that Altria, Reynolds, their respective officers and employees engaged in lobbying activities in Montana to certify in writing, *inter alia*, that they are aware of, and will fully comply with, the MSA and all laws and regulations applicable to their lobbying activities in Montana.

31.    The MSA represents a binding contract between the State of Montana and Altria, Reynolds (and both NJOY and Reynolds Vapor as their affiliates). Altria, Reynolds and their affiliates are therefore legally bound to comply with the MSA's various affirmative requirements and negative prohibitions.

32.    MSA Section XVIII(n) provides that the MSA is to be governed by the law of the respective signatory states without regard to such states' respective conflicts of laws rules. In this instance, the MSA is to be interpreted pursuant to Montana law for purposes of this action.

## COUNT I
### Altria's and Reynolds's Violation of MSA Section III(m)
### Failure to Adhere to Certification Requirements

33.    Marshall incorporates by reference all preceding allegations.

34.    Upon information and belief, Altria, Reynolds, their affiliates and their respective officers and employees who engage in lobbying activities in Montana have failed to make the certifications required by MSA Section III(m) prior to lobbying in the State of Montana.

35.    Marshall asserts that a failure of Altria, Reynolds, their affiliates and their respective officers and employees who engage in lobbying activities in Montana to make the certifications required by MSA Section III(m) constitutes a breach of the MSA by them and such breach has resulted in an injury to the citizens of the State of Montana.

36.    A remedy at law does not exist with respect to the failure described in the above paragraphs, thus warranting the imposition of specific performance of the MSA's provisions against Altria, Reynolds, and their affiliates.

37.    The issuance of a preliminary and permanent injunction is warranted by the facts set forth above because Marshall has shown: (1) a substantial likelihood of success on the merits of his allegations that Altria, NJOY, Reynolds and Reynolds Vapor have violated the lobbying certification requirements set forth in MSA Section III(m); (2) the existence of irreparable harm in the absence of preliminary

relief since there is no adequate remedy at law; (3) that the balance of equities weigh in his favor; and (4) a preliminary and permanent injunction is in the public interest given the importance of upholding the MSA's provisions.

**COUNT II**
**2025 House Bill 149 and Altria's and Reynolds's Violation of**
**MSA Section III(m) Anti-Lobbying Prohibitions**

38.  Marshall incorporates by reference all preceding allegations.

39.  Marshall, in his official legislative capacity, sponsored 2025 House Bill 149 (HB 149), the scope of which proposes to:

(1)  regulate and restrict the sale of "alternative nicotine products" and "vapor products," both terms defined therein, through vending machines;

(2)  prohibit the sale or distribution of "tobacco products" to persons under 18 years of age;

(3)  regulate and restrict the sale of "tobacco products" in vending machines;

(4)  impose licensing and inspection requirements for purveyors of tobacco products;

(5)  impose civil penalties and license suspension relating to violations of sales of tobacco products; and

(6)  provide that minors (those persons under 18 years of age) who assist law enforcement are not liable under a civil or criminal law for the possession, or attempted purchase of a tobacco product.

A true and accurate digital copy of HB 149 is attached hereto as **Exhibit 2**.

40.  The scope of the regulatory provisions encompassed by HB 149 are within

the subject matter covered by the anti-lobbying provisions set forth in MSA Section III(m) and Exhibit F thereto.

41. HB 149 passed the Montana House Committee on Business and Labor on or about January 28, 2025.

42. Despite such fact, Altria and NJOY, acting through lobbyist Mark Baker (hereinafter "Baker"), and Reynolds and Reynolds Vapor, acting through lobbyist Edward J. Redding (hereinafter "Redding"), have lobbied members of the Montana Legislature in opposition to HB 149 and such lobbying efforts have resulted in the HB 149 being stalled on the floor of the Montana House of Representatives prior to a required second reading and floor vote.

43. At all times pertinent hereto, Baker was acting as a duly authorized lobbying agent for Altria and NJOY for purposes of MSA Section III(m), and Redding was acting as a duly authorized lobbying agent for Reynolds and Reynolds Vapor for purposes of MSA Section III(m).

44. The acts of Altria, NJOY, Reynolds and Reynolds Vapor, by and through Baker and Redding, respectively, constitute a breach of the anti-lobbying provisions set forth in MSA Section III(m) and such breach has resulted in an injury to the citizens of the State of Montana.

45. A remedy at law does not exist with respect to the failure described in numerical paragraphs 42, thus warranting the imposition of specific performance of

the MSA's provisions against Altria, Reynolds and their affiliates.

46.  The issuance of a preliminary and permanent injunction is warranted by the facts set forth above because Marshall has shown: (1) a substantial likelihood of success on the merits of his allegations that Altria, NJOY, Reynolds and Reynolds Vapor have violated the anti-lobbying prohibitions set forth in MSA Section III(m); (2) the existence of irreparable harm in the absence of preliminary relief since there is no adequate remedy at law; (3) that the balance of equities weigh in his favor; and (4) a preliminary and permanent injunction is in the public interest given the importance of upholding the MSA's provisions.

## COUNT III
## Altria and Reynolds Proposed Monopoly Legislation and Their Violation of MSA Section III(a)

47.  Marshall incorporates by reference all preceding allegations.

48.  During the ongoing 2025 Montana legislative session, Altria, NJOY, Reynolds and Reynolds Vapor, through Baker and Redding as their respective agents and lobbyists, have also lobbied members of the Montana House of Representatives and Senate to approve LC 1706 in order to prohibit the sale of vaping products in Montana which lack a grant of marketing authorization from the United States Food and Drug Administration (FDA).

49.  Upon information and belief, Altria and Reynolds have successfully lobbied for the passage of similar bills in Alabama, Kentucky, Iowa, Louisiana and

Utah, and have previously engaged, or are presently engaged, in lobbying to seek similar bills in Florida, Georgia, Idaho, North Carolina, South Carolina, South Dakota, Virginia and Wisconsin.

50. Altria's NJOY closed-system vaping products and Reynold's VUSE closed-system vaping products are among the limited array of vaping products which have obtained FDA marketing authorization.[3]

51. Upon information and belief, the primary purpose of Altria, NJOY, Reynolds and Reynolds Vapor pursing the passage of LC 1706 is to force a market exit from the State of Montana of all competing disposable (closed-system) vaping products and all competing open-system vaping products because they lack FDA market authorization; thus ensuring Altria, Reynolds, and their affiliates have a virtual market monopoly for vaping products.

52. The 2023 National Youth Tobacco Survey (hereinafter "NYTS") conducted annually by the United States Centers for Disease Control and Prevention, however, evidenced that a significant number of youths reported using both Altria's NJOY branded closed-system vaping products and Reynold's VUSE branded closed-system vaping products: with approximately 7.5% of youths who identified

---

[3] *See* https://www.fda.gov/tobacco-products/premarket-tobacco-product-applications/premarket-tobacco-product-marketing-granted-orders (evidencing FDA market authorization for the NJOY tobacco-flavored closed-system vaping products, the NJOY *ACE* device and tobacco-flavored closed-system vaping products, and the VUSE *Vibe* and *Ciro* closed-system vaping products).

themselves as then users of vaping products reported using Altria's NJOY closed-system vaping products and approximately 16.5% of youths who identified themselves as then users of vaping products reported using Reynold's VUSE closed-system vaping products.[4]

53.  The 2023 NYTS further evidenced that approximately 60.7% of youths who identified themselves as then users of vaping products reported using disposable closed-system vaping products.

54.  In addressing youth preferences for vaping products, FDA has found the existence of a fluidity of preference across the various type of vaping products (between different closed-system products and between closed-system and open-system products) such that youths will migrate from one form of vaping product to another based upon evolving marketplace characteristics. FDA based such conclusion upon its observation: (1) that youths migrated from pod-based closed-system vaping products to disposable closed-system vaping products beginning in 2020 after it undertook enhanced enforcement against the former[5], and (2) that youths also migrated to open-system vaping products as shown in the 2021 NYTS.[6]

55.  The inference to be drawn from FDA's observations and conclusions is that youths will migrate to whatever type of vaping products are the most easily

---

[4] *See* https://www.cdc.gov/mmwr/volumes/72/wr/pdfs/mm7244a1-H.pdf  at Table 2.
[5] *See* https://www.fda.gov/media/152504/download at 7.
[6] *See* https://www.cdc.gov/mmwr/volumes/71/ss/pdfs/ss7105a1-H.pdf at Figure 3.

accessible, such that a removal of their current preferred products (*i.e.* disposable vaping products) will cause them to migrate to the next easiest accessible product, which would become the NJOY and VUSE branded products if LC 1706 were to become law.

56. Upon information and belief, based upon the 2023 NYTS data and FDA conclusions, the ultimate result of the passage of LC 1706 would be that more Montana youths migrate their usage of vaping products from existing disposable (closed-system) vaping products to the NJOY branded (closed-system) vaping products manufactured and sold by Altria and NJOY and/or the VUSE branded products manufactured and sold by Reynolds and Reynolds Vapor.

57. Upon information and belief, another consequence of the passage of LC 1706 would be increased cigarette smoking among Montana's youth based upon the January 2024 Yale School of Public Health study which demonstrated the occurrence of increased cigarette sales, particularly among brands preferred by youths, in jurisdictions which banned vaping products[7] and the December 2024 study by the same scientists which concluded that restrictions on vaping products resulted in increased smoking among adults age 18 to 29.[8]

---

[7] Friedman, A.*, et. al., E-cigarette Flavor Restrictions' Effects on Tobacco Product Sales* (Jan. 29, 2024).

[8] Friedman A., *et. al*., Flavored E-Cigarette Sales Restrictions and Young Adult Tobacco Use, JAMA HEALTH FORUM, 2024:5(12) (Dec. 27, 2024).

58.  The acts of Altria, NJOY, Reynolds, and Reynolds Vapor, by and through Baker and Redding, described in the foregoing paragraphs constitute a breach of MSA, Section III(a) because they both directly or indirectly target youth within Montana in the advertising, promotion or marketing of tobacco products and have the primary purpose to initiate, maintain or increase the incidence of youth smoking within Montana, and such breach has resulted in an injury to the citizens of the State of Montana.

59.  A remedy at law does not exist with respect to the failure described in the foregoing paragraphs, thus warranting the imposition of specific performance of the MSA's provisions against Altria, Reynolds, and their affiliates.

60.  The issuance of a preliminary and permanent injunction is warranted by the facts set forth above because Marshall has shown: (1) a substantial likelihood of success on the merits as to the allegations that Altria, NJOY, Reynolds and Reynolds Vapor has violated MSA Section III(a); (2) the existence of irreparable harm in the absence of preliminary relief since there is no adequate remedy at law; (3) that the balance of equities tips in his favor; and (4) a preliminary and permanent injunction is in the public interest given the importance of upholding the MSA's provisions.

61.  Marshall reserves the right to further amend the allegations set forth in this Verified Petition as may be warranted by facts disclosed during the course of discovery.

WHEREFORE, the Petitioner, Ron Marshall, in his official capacity as Representative for the 87th Legislative District, Montana House of Representatives, respectfully prays for the following:

1.    A judgment upon Count I which determines that Altria, NJOY, Reynolds and Reynolds Vapor breached the MSA Section III(m) with respect to their failure to make the certifications required thereby and grants a temporary and permanent injunction against Altria, NJOY, Reynolds and Reynolds Vapor, and all persons acting at their direction or in concert with them in the State of Montana and the other MSA signatory states from engaging in lobbying activities until such persons have complied with the certification requirements set forth in MSA Section III(m);

2.    A judgment upon Count II which determines that Altria, NJOY, Reynolds and Reynolds Vapor breached MSA Section III(m) with respect to their lobbying efforts in opposition to HB 149 and grants a temporary and permanent injunction against Altria, NJOY, Reynolds and Reynolds Vapor, and all persons acting at their direction or in concert with them in the State of Montana and the other MSA signatory states from engaging in lobbying activities which oppose legislation containing provisions similar to those embodied in either HB 149 or identified in MSA Exhibit F;

3.    A judgment upon Count III which determines that Altria, NJOY, Reynolds and Reynolds Vapor breached MSA Section III(a) with respect to their lobbying

efforts in support of LC 1706 and grants a temporary and permanent injunction against Altria, NJOY, Reynolds and Reynolds Vapor, and all persons acting at their direction or in concert with them in the State of Montana and the other MSA signatory states from engaging in lobbying activities which support LC 1706 or any other legislation which seeks to prohibit the marketing and sale of vaping products based upon the status of having FDA authorization because of the propensity of such prohibitions to directly or indirectly target youth in the advertising, promotion or marketing of tobacco products and likely resulting in the initiation, maintaining or increasing the incidences of youth cigarette smoking;

4.    His costs and reasonable attorney's fees incurred herein under the private attorney general doctrine; and

5.    All further relief upon which relief may be granted.

RESPECTFULLY SUBMITTED this 11th day of February 2025

ORR MCDONNELL LAW, PLLC

_/s/ Gregory A. McDonnell_

Gregory A. McDonnell
627 Woody Street
Missoula, MT 59802
(406) 543-0999
greg@omlmt.com
katie@omlmt.com

## **VERIFICATION**

I, Ron Marshall, in my official capacity as Representative for the 87th Legislative District, Montana House of Representatives, hereby verify and affirm that I have read the foregoing Verified Petition and that the statements and allegations contained therein are true and accurate to my best knowledge and belief.

RON MARSHALL
in his official capacity as Representative
for the 87th Legislative District,
Montana House of Representatives

STATE OF MONTANA

COUNTY OF LEWIS AND CLARK

This instrument was signed or acknowledged before me on February 11th, 2025 by Ron Marshall, in his official capacity as Representative for the 87th Legislative District, Montana House of Representatives.

EM J KRISSOVICH
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
February 9, 2025

[SEAL]

NOTARY PUBLIC