IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RON MARSHALL, in his official capacity as Representative of the 87th Legislative District, Montana House of Representatives,<br><br>Petitioner,<br><br>vs.<br><br>THE ALTRIA GROUP, INC., NJOY HOLDINGS, INC., R.J. REYNOLDS TOBACCO COMPANY and, R.J. REYNOLDS VAPOR COMPANY,<br><br>Respondents. | CV 25–13–H–DLC<br><br><br>ORDER |

Before the Court is Petitioner Ron Marshall's Motion for Preliminary Injunction. (Doc. 3.) The Court held a hearing on the Motion on February 24, 2025. For the reasons herein, the Motion is DENIED.

**BACKGROUND**

**I.    The Parties[1]**

Petitioner Ron Marshall is an elected Representative for the 87th Legislative

---

[1] This section is derived from Petitioner's Verified Petition for Declaratory Judgment and Preliminary and Permanent Injunctive Relief. (Doc. 1.)

1

District of the Montana House of Representatives. Petitioner asserts that he brings "this action in his official capacity under the private attorney general doctrine on behalf of the citizens of the 87th Legislative District and the citizens of the State of Montana as a whole." Petitioner sponsored House Bill 149 ("HB 149"), one of two legislative actions which are central to this dispute.

Respondent Altria Group, Inc. ("Altria") is a cigarette manufacturer and direct successor of the Phillip Morris Companies. Respondent NJOY Holdings, Inc. ("NJOY") is an affiliate of Altria that markets and sells vaping products.

Respondent R.J. Reynolds Company markets and sells tobacco products. Respondent R.J. Reynolds Vapor Company markets and sells vaping products.

## II.   The Tobacco Master Settlement Agreement

In November 1998, Montana and other states ("Settling States") settled litigation against the country's four largest tobacco manufacturers, Phillip Morris Inc., R.J. Reynolds, Brown & Williamson, and Lorillard, by entering into the Tobacco Master Settlement Agreement ("MSA"). (Doc. 1-1.) The MSA restricts the tobacco companies—referred to in the MSA as "Participating Members"—from engaging in certain marketing and lobbying activities. Central to this dispute, Section III(m)(1) prohibits Participating Manufacturers from opposing legislative proposals or administrative rules "including through any third party or Affiliate . . . intended . . . to reduce Youth access to, and the incidence of Youth

consumption of, Tobacco Products." (Doc. 1-1 at 37.) The MSA defines Tobacco Products as "Cigarettes and smokeless tobacco products." (Doc. 1-1 at 25.) Section III(a) prohibits Participating Manufacturers from taking "any action, directly or indirectly, to target Youth within any Settling State in the advertising, promotion or marketing of Tobacco Products, or take any action the primary purpose of which is to initiate, maintain[,] or increase the incidence of Youth smoking within any Settling State." (Doc. 1-1 at 26–27.)

The MSA also outlines mechanisms for enforcement. Section VII(c) provides that "any Settling State or Participating Manufacturer may bring an action in the Court to enforce the terms of this Agreement . . . with respect to disputes, alleged violations[,] or alleged breaches within such Settling State." (Doc. 1-1 at 57.) Section XVIII(p) provides that "[n]o portion of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Party. No Settling State may assign or otherwise convey any right to enforce any provision of this Agreement." (Doc. 1-1 at 145.)

### III.  This Action

On February 11, 2025, Petitioner filed this lawsuit alleging that Respondents violated the MSA by lobbying for HB 149 and against LC 1706.[2] (Doc. 1.)

---

[2] In Petitioner's Verified Complaint, Petitioner also alleged that Respondents failed to make the certifications required by MSA Section III(m) prior to lobbying in the State of Montana. (Doc. 1 ¶¶ 34–37.) However, at the February 24, 2025 hearing,

3

Petitioner alleges that Respondents have violated Section III(m)(1) by lobbying members of the Montana House Legislature in opposition of HB 149 resulting in the stalling of the bill on the floor of the Montana House of Representatives. (Doc. 1 at 13.) In addition, Petitioner alleges that Respondents have violated Section III(a) by lobbying in support of LC 1706, the passage of which "would limit the existence of vaping products on the market, create a market monopoly for the Respondents, and increase the youth usage of cigarettes [] in Montana."[3] (Docs. 1 ¶¶ 48–58, 3-1 at 3.)

On February 12, 2025, Petitioner filed the instant Motion. (Doc. 3.) Through the Motion, Petitioner requests that this Court preliminarily enjoin Respondents from lobbying in opposition of HB 149 and in favor of LC 1706. (Doc. 3-1 at 3.)

The case was originally assigned to United States Magistrate Judge Timothy J. Cavan. On February 13, 2025, in light of the Motion for Preliminary Injunction, Chief District Judge Brian M. Morris reassigned the case to the undersigned. (Doc. 4.)

## LEGAL STANDARD

In order to obtain a preliminary injunction, Petitioner must establish "that he

---

the Court granted Petitioner's unopposed motion to dismiss that count with prejudice.
[3] Since this action was filed, LC 1706 was introduced in the Montana House of Representatives as House Bill 525 ("HB 525"). At the hearing, the Parties agreed that HB 525 is identical to LC 1706.

is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

## DISCUSSION

In their respective response briefs, Respondents argue that Petitioner lacks both contractual standing and Article III standing to bring this action. (Docs. 26 at 21–24, 30 at 13–15.) The Court agrees.

### I.  Contractual Standing

In diversity actions, "the relevant state law determines whether the [Petitioner] is the proper party to maintain the action." *Carlson v. Clapper*, 2019 WL 1061743, at *3 (N.D. Cal. Mar. 6, 2019) (citing *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1093–94 (9th Cir. 2004).) The Court therefore looks to Montana law to determine whether Petitioner has standing.

In Montana, "[a] stranger to a contract lacks standing to sue for breach of contract unless he is the intended third-party beneficiary of the contract." *Kurtzenacker v. Davis Surveying, Inc.*, 278 P.3d 1002, 1006 (Mont. 2012).

The MSA is a contractual agreement between the Settling States and Participating Manufacturers. (Doc. 1-1 at 9.) The MSA forbids Settling States from assigning or conveying any rights to enforce any provision of the agreement to a

third party. (Doc. 1-1 at 145.) Petitioner does not allege that he is a Settling State or a Participating Manufacturer. Petitioner likewise does not allege that he is an intended third-party beneficiary of the contract. The Court finds that Petitioner is "a stranger to [the MSA]," and therefore lacks standing to sue for any breach of the MSA's terms.

## II. Article III Standing

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). This notion is derived from the United States Constitution itself, which limits the Court's subject matter jurisdiction to justiciable "cases" or "controversies." U.S. Const., art. III, § 2. As such, it is incumbent upon this Court to ascertain whether subject matter jurisdiction exists before analyzing the merits of a litigant's claims. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Indeed, this Court is to presume it is without jurisdiction to hear a case until a contrary showing is made. *Stock W., Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

"The Constitution's case-or-controversy limitation on federal judicial authority" requires that Petitioner has standing to prosecute this action before this Court can adjudicate it on the merits. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). In order to establish standing,

Petitioner must show "(1) [he has] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* At the preliminary injunction stage, Petitioner "must make a clear showing of each element of standing." *LA All. for Hum. Rts. v. Cnty. of Los Angeles.*, 14 F.4th 947, 956 (9th Cir. 2021). Petitioner has not made that showing here.

First, Petitioner has not made a clear showing of a concrete and particularized, actual and imminent injury in fact. Petitioner alleges that "[t]he citizens of the State of Montana will unquestionably suffer significant and multiple forms of immediate harm if the Respondents are allowed to continue their illicit lobbying activities." (Doc. 3-1 at 7.) Specifically, Petitioner avers that the citizens of the state of Montana will face an increase in youth smoking, disruption of Montana-owned businesses, and "the possible creation of laws which become effective before this Court can issue a preliminary injunction." (*Id.* at 3.)

Unfortunately for Petitioner, it is well established that a party "must allege facts showing that he is himself adversely affected." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 473 (1982). This requirement prevents the Federal Courts from becoming "no more than a

7

vehicle for the vindication of the value interests of concerned bystanders." *Id.* Petitioner has not "assert[ed] his own legal rights and interests[] and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013).

Even if Petitioner could establish injury in fact through third parties, the harms Petitioner has alleged are based solely on "information and belief." (Doc. 1 ¶¶ 34, 49, 51, 56–57.) At the hearing, Petitioner himself admitted that there is a chance HB 149 will pass. Petitioner's conjectural and hypothetical injuries are insufficient to establish standing or obtain an injunction. *See, e.g., Lydo Enterprises, Inc. v. City of Las Vegas*, 745 F.2d 1211, 1216 (9th Cir. 1984) ("A preliminary injunction is not justified when based mainly on speculation.").

### III.   Private Attorney General Doctrine

Petitioner unsuccessfully attempts to circumvent his standing issues through the private attorney general doctrine.

Petitioner acknowledges that the MSA is a contract between the Settling States and the Participating Manufacturers. Petitioner further acknowledges that under Montana law, the Montana Attorney General is responsible for "representing the State of Montana in matters which concern the protection of its citizens." (Doc. 1 ¶ 2.)

However, according to Petitioner, "[i]n this instance,[] the Montana Attorney General, Austin Knudsen, has an inextricable conflict of interest by virtue of the fact that both Altria and Reynolds were 'platinum' sponsors of his January 11, 2025 inauguration party." (Doc. 1 ¶ 3.) In addition, Petitioner highlights a January 28, 2025 op-ed authored by Attorney General Knudsen, which Petitioner claims "evidences an abdication of his duties to enforce the portions of the MSA here at issue against Altria, Reynolds, and their affiliates." (Doc. 1 ¶ 3.) Petitioner does not explain whose responsibility it is to determine whether Attorney General Knudsen has a conflict of interest. Nor does Petitioner convince the Court that—as a Legislator—Petitioner is the appropriate individual to make that determination. Nevertheless, the Court has reviewed the private attorney general doctrine and determined that it is inapplicable here.[4]

"The private attorney general doctrine applies when the government fails to properly enforce interests which are significant to its citizens." *Baxter v. State*, 224 P.3d 1211, 1221 (Mont. 2009). The doctrine allows an award for attorneys' fees and "applies *only when constitutional rights are vindicated*." *Id.* (emphasis added).

---

[4] As the Court was preparing to file this Order, Petitioner filed a Declaration describing Attorney General Knudsen's appearance at the Montana Legislature in support of HB 525. (Doc. 44.) That Declaration does not alter the Court's analysis or conclusion regarding the inapplicability of the private attorney general doctrine to this matter.

9

In Petitioner's reply brief, he states that "[t]he Montana Supreme Court . . . 'has yet' to address the application of the private attorney general doctrine in a non-constitutional case in which a party has not made an application for attorney fees, yet the subject action otherwise satisfies the criteria for such application. That is precisely the case here." (Doc. 32 at 4.) In essence, Petitioner—a member of the legislative branch of Montana's state government—admits that Montana law does not currently allow a private citizen to step into the shoes of Attorney General Knudsen—an elected official within the executive branch of Montana's state government—to enforce the terms of the MSA. Petitioner asks this Court to assert its federal judicial powers to not only expand Montana state law by allowing Petitioner to take on the enforcement roles of the state executive branch, but also, to halt certain ongoing activities at the Montana State Legislature. The Court—at risk of understatement—does not take this request lightly and—out of respect for the separation of powers—declines the invitation.

## CONCLUSION

Petitioner has not met the burden of establishing the standing required to obtain a preliminary injunction. The private attorney general doctrine is not applicable here. Therefore, Petitioner's Motion must be denied.

Accordingly, IT IS ORDERED that he Motion (Doc. 3) is DENIED.

DATED this 26th day of February, 2025.

10

Dana L. Christensen, District Judge
United States District Court